## HUBLER v DAYTON (city)

Ohio Appeals, 2nd Dist, Montgomery Co

No 1559. Decided May 9, 1939

Herbert S. Beane, City Attorney, Dayton; E. W. Kruse, Dayton, and M. J. Gilbert, Dayton, Asst. City Attorneys, for defendant-appellee and for the Application.

A. K. Meck, Dayton, for defendant-appellant and contra the Application.

### OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment for defendant upon directed verdict of the trial judge at the conclusion of the introduction of plaintiff's evidence on the trial of the cause to a jury. The trial judge in sustaining the motion of defendant for directed verdict, among other things, said:

"One of the elements in a case of this kind is that the City must have notice, either actual or constructive that the condition which caused the injury existed, and the Court considers that the plaintiff's testimony fails to show any evidence that the City had actual knowledge that this pipe was open, as it was claimed to be at the time the injury occurred.

The Court also finds that there is no constructive notice, that is—that the condition hadn't existed and remained open for a period of time long enough for the City to be deemed to have knowledge that it existed."

The errors assigned all go to the correctness of the action of the trial judge in sustaining the motion for directed verdict. Inasmuch as there is nothing in the record upon which express or actual notice to the City can be predicated, the question may be narrowed to the inquiry whether or not there is any evidence from which constructive notice to the city may be inferred or found.

The condtion upon which plaintiff predicates her action against the city was caused by the insertion of a five inch virtrified tile in front of lot No. 1527 Malvern Avenue, Dayton, Ohio. Between the sidewalk and the curb, at the street, there was inserted the vitrified tile about five inches in diameter, perpendicular in the ground and extending from the surface to a depth of seven or eight feet. The tile was originally placed by the Sanitary Sewer Department of Montgomery County in 1929. After the installation of the tile, and several years ago. the City of Dayton took over that portion of the city where the alleged obstruction in the street was placed.

On August 23, 1935, plaintiff stepped into said tile with her left foot, caught her heel and was injured. It. is averred that the city had actual and constructive knowledge of the presence and condition of the tile. It is specifically alleged,

"Said tile was broken and open and at all times constituted a defect in and obstruction of said Malvern Avenue, and during all of said time it constituted a dangerous place and a hazard to travel."

It developed in the testimony that the inside diameter of the tile was approximately five inches and the outside about seven inches; that to close it a cap is put down in the opening of the tile, which fits down into the bell and over the top of the pipe. It appears that at the time the plaintiff was injured there was no covering on the tile and it was broken.

It is urged that the proof as to constructive notice of the condition of the tile to the city was sufficiently proven to carry the question to the jury. Counsel also insists that it was the obligation of the city to remove the tile. We do not believe this question is raised by the petition. It is also urged that the city should have known that the cap could easily be lifted out of said tile or the tile could be easily broken and the cap lost out. This claim is well made as to the absence of the cap as related to the question of the constructive notice to the city of the condition of which plaintiff complains, but the absence of the cap, as such, is not the predicate upon which plaintiff bases her cause of action against the city.

There is but one question presented by this appeal, as we have heretofore indicated, namely, was the open condition of the tile, which caused plaintiff's heel to go into the tile and produced her injuries, present for such a length of time prior to the date of her fall as that the city, in the exercise of ordinary care, should have known of this dangerous condition.

As to the averment that the city had notice of the broken state of the tile, there is no proper evidence. Plaintiff tendered the statement of one witness that the break indicated that it was old. This was refused by the trial judge and the action is asserted as an assignment of error. We do not believe that the witness was qualified to express an

opinion on the proposition whether or not the break was an old one. It is probable that this proof ██ would have been the subject of expert knowledge and might have been made had it been tendered by a witness who was qualified by reason of the special knowledge to express an opinion as to the age of the break in the vitrified tile.

Constructive notice, if present, must be found in the testimony of one witness, Mrs. Mary Solkov. Her statements on the question are not especially lucid and some of them are contradictory. A better appreciation of the probative effect of her evidence will be disclosed by liberal and literal quotation from the questions propounded and the answers by her made.

Record Page 26:

"Q. Will you tell the jury—just tell them what was there in August 28th—or 23, 1935.

A. What was on the ground?

Q. Yes, between the curb and the sidewalk. Will you explain what the condition was there?

A. There was a pipe there—a little pipe, a small pipe and then I never know that there was anything there. It was open, you know. Once in a while we put in some grass and paper and they alway used to accumulate or something. I lived there for ten years and it never was in my mind to go out there and look it up, and when we cut the grass—you know it happens and Mr. Hubler, he come and show it to me. That is the time I know all this was there. Before I never, never know it was so high. It was right level with the ground you know. I never knew that before and he showed it to me."

Record Page 27:

"Q. Did it have any cap on it at any time, any cement or tile cap in the covering, in it, at any time that you saw?

A. No, not that time, you know.

Q. Did you ever see any cap in it?

A. I don't remember.

Q. You don't remember ever seeing any cap?

A. No.

Q. And this hole has always been there?

A. I really couldn't tell you. I don't know. I just told you I just find that out when Mr. Hubler was telling me there was a hole there. He was telling me an accident happened by falling there. It was open you know, once in a while. I never did really pay attention to that, you see. There was always stuffed up a little bit."

Record Page 28:

"Q. Ma'am?

A. It was always stuffed up a little bit. Accumulation, you know.

Q. What was stuck in there?

A. Paper and stuff and stones.

Q. Paper and stones? A. Yes.

Q. Did you ever throw anything down into the tile?

A. Well, when we cut the grass, yes.

Q. That would be before the year 1935, before Mrs. Hubler was hurt?

A. I think that was—a couple of years ago. I couldn't remember about that. I never know until it happens, you know, but I know, you know, I remember just a—

Q. Did you, or any of your family, ever get hurt in that hole previous to the time Mrs. Hubler did?

A. Never got hurt, no. We never got hurt but I tell you one time, myself, my heel fell in there but I was not hurt. It was stuffed up full, you know. I just went in with my heel but I never had nothing hurt me or do me harm. Just like my heel goes in that little hole, you know.

Q. Previous to that had you thrown papers down in there and grass down into the tile? And they would go way down deep, would they? A. No.

Q. How far down would they go? A. I wouldn't know. Just like you—with grass, they were always filled up to that neck, you know.

Q. What grass do you mean you would throw down in there?

A. When you would cut the grass, you know.

Q. When you would cut the grass you would stuff it down in this hole?

A. I never cut grass. It was just accumulated. I would always go and stuff it in and see it was built up to the level around that thing."

Record Page 29:

"Q. Would you put some of the grass cuttings down there?

A. Naturally if it is a little open hole, you put it in. You are not particular to get them in.

Q. Did you put some papers down there various times?

A. Not only when I cut the grass, but some time a long time ago. This happened a long long time ago. I didn't put it in exactly but there were some papers all sticking in there.

Q. Stuffed down in the tile? A. Yes.

Q. Now when was it you stepped in this tile? How long before Mrs. Hubler stepped in it?

(Interruption and no answer given).

Q. And was it before you remember when Mrs. Hubler was hurt in that hole? A. Yes.

Q. Did you step into that before that? A. I think so, yes, I think so.

Q. About how long before that?

A. Oh, it was quite a couple of years before, maybe."

Cross-examination, Page 31:

"Q. Can you tell these ladies and gentlemen of the jury, if you ever remember having seen that thing open prior to August 23, 1935? Do you or do you not remember seeing that open before?

A. Only what I heard Mr. Hubler say. He took me out and told me there was an opening, you see, and I cannot understand why it was open. It was always stopped up like I told you before."

The trial judge upon considering a motion by defendant for a directed verdict must give the most favorable intendment of the evidence to the plaintiff. So doing in this case, it seems to us that the jury could have found that this tile was for a considerable period of time, prior to the date when plaintiff was injured, so open that the defendant would have been put upon notice of its condition. The condition which caused plaintiff's injuries was that the tile was in such a state of unrepair that her heel could slip down into the opening in the tile. This could have happened, although there may have been some articles such as paper or grass in the tile. The fact that the tile may have had such articles in it would not preclude a finding that to all intents and purposes, as relating to the accident which plaintiff suffered, it was open. Nor would the fact that it was entirely open and free from any content whatever on the date that plaintiff was injured require the conclusion that it was not open at some other time, though it did then have some content. Then too, it is obvious that the normal and in fact the only proper method of covering this tile was by a cap. The officers of the city who were charged with the care and maintenance of the streets and sewers were chargeable with knowledge of the usual and proper mode of capping such tiles as the one under consideration. The fact that it did not have such a cap at the time of plaintiff's injuries and long prior thereto, under the evidence of Mrs. Solkov, is evidence of further probative effect that the city should have known of the fact that the tile was open.

Of course, we do not mean to say that the proof is conclusive that the city had constructive knowledge of the dangerous condition of the tile, as alleged in the petition, but there is sufficient proof in the record to carry the question to the jury. Under one phase of Mrs. Solkov's testimony this condition of the tile wherein it was not capped and was used for grass and for the reception of papers etc., had existed for two years prior to the date of

plaintiff's injuries. If so, during the fall and winter months there was no grass about the tile and its condition would be more readily discernible than in the summer periods.

In Painesville v Lautermilch, 118 Oh St 167 it is said in the syllabus:

"Whenever from conflicting evidence of the same witness, or of different witnesses, it becomes ▮▮▮▮▮▮▮▮▮▮ necessary to weigh such conflicting evidence to determine wherein probable truth lies or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade the province of the jury."

We have not considered nor discussed authorities cited by counsel for the respective parties because there is no principle involved in the question presented which requires their discussion.

We are of opinion that plaintiff had the right to have the question of constructive notice to defendant of the open tile, where plaintiff claims to have been injured, submitted to the jury and that the court erred in sustaining the motion of the defendant for a directed verdict.

Judgment will be reversed and cause remainded.

GEIGER and BARNES, JJ., concur.

## APPLICATION FOR REHEARING

No 1559. Decided May 29, 1939

BY THE COURT:
Submitted on application of defendant-appellee for rehearing upon three grounds.

1. The decision applies the scintilla rule of evidence.

2. The Painesville case was decided some six years before the abolition of the scintilla rule. Moreover it is distinguishable on the state of the record.

3. The theory of appellant's case was based, both on the pleadings and proof, upon the long continued existence of an open hole. This was denied in four specific instances in the testimony of the appellant's own witness, Mary Solkov. The decision of this Court states that it is in this testimony alone that constructive notice must be found.

The Court, of course, did not apply the scintilla rule to the evidence but it did give application to the principle which has not been changed by **Hamden Lodge v Ohio Fuel Gas Company, 127 Oh St 469,** that on a motion to direct a verdict for the defendant, the evidence must be given the most favorable interpretation in behalf of the plaintiff. Hornbeck and Adams Trial and Appellate Practice, 173 and cases cited.

We readily concede that under the testimony of Mary Solkov in some of its aspects, the jury could have found that constructive notice to the city was not established. On the other hand, a careful reading of her statement in the record, in our judgment, would also support a finding that the condition of which plaintiff complained and upon which she predicated her specification of negligence had existed for sufficient length of time as to put the city upon notice.

The application for rehearing will be denied.

HORNBECK, PJ, GEIGER & BARNES, JJ, concur.